IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ENTERPRISE RENT-A-CAR | ) | MDL No. 2056 |
| WAGE & HOUR EMPLOYMENT | ) | |
| PRACTICES LITIGATION | ) | Misc. No. 09-210 |
| | ) | |
| | ) | Civil No. 07-1687 |
| NICKOLAS HICKTON, *et. al.*, | ) | Civil No. 09-0815 |
| | ) | Civil No. 09-0816 |
| Plaintiffs, | ) | Civil No. 09-0824 |
| | ) | Civil No. 09-0832 |
| v. | ) | Civil No. 09-0833 |
| | ) | Civil No. 09-1188 |
| ENTERPRISE RENT-A-CAR | ) | Civil No. 09-1321 |
| COMPANY, *et. al.*, | ) | Civil No. 10-1003 |
| | ) | Civil No. 10-1189 |
| Defendants. | ) | Civil No. 10-1456 |
| | ) | Civil No. 11-0071 |
| | ) | Civil No. 11-0333 |
| | ) | Civil No. 11-1024 |
| | ) | Civil No. 12-0659 |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | |
| Hagler v. Enterprise Leasing Company | ) | |
| – South Central, Civil No. 09-1321 | ) | |
| | ) | |

**MEMORANDUM OPINION**

CONTI, District Judge.

*I. Introduction*

This opinion concerns sample plaintiff Kevin Hagler ("Hagler").  Pending before the

court are eight motions for summary judgment filed by the relevant operating subsidiaries

(collectively "defendants") of former defendant Enterprise Rent-a-Car Company ("ERAC")

against sample plaintiffs[1] selected from the cases consolidated in this multidistrict litigation

---

[1] The following individuals were selected as sample plaintiffs: Robert Bajkowski; Joseph Biski; Wayman F. Graham
II; Kevin C. Hagler ("Hagler"); Nils Hagstrom; Nickolas C. Hickton; Melinda McQuaig (formerly, Melinda Herrin);
and Brandon Singleton.

("MDL").  The consolidated cases involve allegations that defendants violated the compensation requirements of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"), by failing to pay plaintiffs overtime compensation.   Plaintiffs are or were assistant managers employed by one of the defendants.

This memorandum opinion addresses the motion for summary judgment filed by defendant Enterprise Leasing Company South Central, Inc. ("ERAC-South Central"), a subsidiary of ERAC, against Hagler.  (ECF No. 251.)[2]  ERAC-South Central argues that Hagler qualified for the executive, administrative and combination exemptions from the compensation requirements of the FLSA.  Hagler responds that summary judgment would be improper at this stage because there are genuine disputes of material facts concerning whether the "narrowly construed" FLSA exemptions are applicable.  ERAC-South Central argues that no dispute is genuine because plaintiffs submitted declarations that violated the "sham affidavit" doctrine in an attempt to fabricate disputes of fact.  In response, Hagler argues that the sham affidavit doctrine is not applicable and that certain of the declarations filed in support of the motion for summary judgment were submitted in violation of Federal Rule of Civil Procedure 26.  Each of those arguments will be addressed.

After an extensive review of the parties' submissions, the hearing transcript of the oral argument and the applicable legal principles, the court concludes that in light of the summary judgment standard of review and the narrowness of the FLSA exemptions, ERAC-South Central failed to satisfy its burden of proving as a matter of law that Hagler was properly classified as

---

[2] Unless otherwise indicated, all references in this opinion to CM/ECF electronic document filing numbers are made with reference to the MDL master docket, filed under the miscellaneous case number 2:09-mc-210.

exempt.  The motion for summary judgment filed by ERAC-South Central against sample

plaintiff Hagler will be DENIED.


## II. Factual Background

On August 30, 2004, ERAC-South Central hired Hagler as a management trainee in its

Birmingham, Alabama branch.  (Hagler JCS I (ECF No. 429) ¶ 2.)  On May 17, 2005, ERAC-

South Central promoted Hagler to management assistant.  (Id. ¶ 4.)  On July 14, 2005, ERAC-

South Central transferred Hagler to the Tuscaloosa, Alabama branch and promoted him to

assistant manager.  (Fondren Decl. (ECF No. 285-2) ¶ 12.)  During any particular day, there were

typically seven to ten management assistants and management trainees, two or three assistant

managers and a branch manager working at the Tuscaloosa branch, as well as four drivers and

two car preps.  (Hagler JCS I ¶ 19; Hagler Dep. (ECF No. 285-1) at 15, 57-58.)  Hagler was

voluntarily terminated from ERAC-South Central on August 16, 2006.  (Fondren Decl. (ECF No.

285-2) ¶ 17.)

While an assistant manager, Hagler spent at least seventy to eighty percent of his time on

nonexempt work, such as writing rental tickets, washing vehicles, performing lube, oil, filter and

rotation ("LOFR") maintenance and assisting customers.  (Hagler Dep. (ECF No. 285-1) at 44,

55-57, 59-60.)  Hagler spent a small percentage of his time (about twenty percent) on tasks such

as marketing, assisting the branch manager in reviewing employees, coaching and counseling,

auditing tickets, managing the fleet, handling accounts receivable and managing the flex-time

schedule.  (Id. at 55-57.)  Hagler admitted that he multitasked by simultaneously performing

nonexempt and exempt work for part of the work day.  (Id. at 60-61.)  His schedule largely

overlapped with that of the branch manager, who was usually present at the branch during the time when Hagler was working.  (Hagler Suppl. Decl. (ECF No. 313, Ex. B) ¶ 7.)

Hagler served as the "counter quarterback," which required him to ensure that all customer needs had been addressed.  (Hagler Dep. (ECF No. 285-1) at 15.)  "Counter quarterback" duties, however, were not unique to assistant managers – management trainees and management assistants also served in that capacity.  (Id.)

Many of Hagler's duties as an assistant manager were either shared or limited by the role of the branch manager.  For example, Hagler and the branch manager determined which employees would be assigned to particular branch duties.  (Id. at 20.)  To some extent, however, everyone was responsible for directing the work of other employees, and would ask others to perform tasks as the need arose.  (Id. at 24.)  At the branch manager's direction Hagler assigned hourly employees to perform callbacks.  (Id. at 16.)  Hagler had the authority to provide verbal coaching and counseling to fellow employees, but providing written counseling always had to be done in conjunction with the branch manager.  (Id. at 34.)  Hagler and the branch manager monitored the rental fleet inventory—including ensuring that older cars were removed from the rental fleet and sent to be sold—and handled rental tickets that had not been paid in full (Id. at 16-18, 38.)  Similarly, "rent growth"—which meant increasing the number of rented cars on the road—was a management-level concern.  (Id. at 37.)  Hagler and the branch manager had keys to the branch and the combination to the safe.  (Id. at 26.)

The branch manager was ultimately responsible for scheduling employees at the branch. (Id. at 12-14.)  Hagler performed administrative tasks relating to scheduling, but was not authorized to make important decisions or resolve conflicts beyond mediating disputes.  (Id.) While Hagler was in charge of maintaining the flex-time schedule for the branch, vacation-time

requests were directed to and approved by the branch manager.  (Id.)  To the extent Hagler could

not resolve a conflict between two employees who requested the same flex-time, the branch

manager was in charge of resolving the conflict.  (Id.)

When Hagler first started working, the branch had three assistant managers (including

him) but it later downsized to two assistant managers.  (Id. at 15.)  At the start of the day, Hagler

and his fellow assistant manager or managers would determine the types of activities in which

they would engage.  (Id. at 15.)  They often arranged for one assistant manager to work in the

office, perhaps performing customer callbacks, while the other would work in the retail space of

the branch.  (Id.)  Hagler communicated with employees to ensure that assigned tasks were being

completed.  (Id. at 23.)  With respect to customer disputes, Hagler, as well as the branch manager

and management trainees, had the authority to intervene and resolve a dispute.  (Id. at 25-26.)

Generally, Hagler participated in employee performance reviews and his involvement

was limited to adding comments to an employee evaluation form, occasionally providing

feedback to the branch manager about the branch manager's comments on the form before the

review, and occasionally sitting in the review with the branch manager to reflect on the

comments Hagler had made.  (Id. at 45-50.)  For instance, the branch manager would complete

his portion of the evaluation form and then Hagler would complete the assistant manager

"comments" section of the form.  (Id.)  In that context, the branch manager generally sought

Hagler's feedback on the performance evaluations, and asked Hagler to read over the

assessments made by the branch manager.  (Id.)  Hagler believed those reviews were considered

as part of the employee's overall assessment and for promotional purposes.  (Id. at 42.)

Hagler did not hire, fire, demote or promote employees.  (Id. at 63.)  Hagler did not

document his observations of employees that would justify disciplinary action; rather, Hagler

5

made verbal references to the branch manager and any disciplinary action would come from the branch manager or area manager.  (Id. at 19-20, 63.)  For example, if an employee was "counter dodging" – avoiding writing rental tickets for customers – or "taking too long for a customer," he would talk to the employee about the issue and report the employee to the branch manager, who would make the actual decision whether to impose discipline.  (Id. at 19; Hagler JCS I (ECF No. 429) ¶ 74.)

Hagler received training on "progressive discipline," a component of which was his authority to "write somebody up" in the significant event log for a disciplinary issue if the branch manager was not on duty, an authority that management trainees and management assistants at Hagler's branch did not possess.  (Hagler JCS I (ECF No. 429) ¶ 75.)  Hagler believed assistant managers received training on writing up employees in the significant event log because assistant managers were "right there on the floor" to witness an event and would be in the better position to document that event, rather than the branch manager who may be working in the back of the branch.  (Hagler Dep. (ECF No. 285-1) at 38-39.)  Hagler could not recall whether an employee at the Tuscaloosa branch was demoted during his tenure as assistant manager and could only recall one instance where an employee – an assistant manager – was terminated.  (Hagler JCS I (ECF No. 429) ¶ 76.)

While Hagler served as an assistant manager, management assistants earned $9.81 per hour.  (Id. ¶ 13; Fondren Decl. (ECF No. 285-2) ¶ 14.)  During the seven-and-a-half months in 2006 before he resigned, Hagler earned $22,751.  (Hagler JCS I (ECF No. 429) ¶ 15.)  Assuming Hagler worked sixty hours per week[3] for thirty weeks in 2006, his hourly rate of compensation was $12.63, or a twenty-eight percent increase over the hourly wage of a management assistant.

---

[3] Hagler often worked more than fifty hours per week.  (Hagler JCS II (ECF No. 429) ¶ 23.)

Had he been a nonexempt employee and received an overtime premium, Hagler's compensation would have reflected a starting hourly rate (assuming sixty hours worked per week) of $10.83 per hour.  Hagler received a percentage of branch profits between 0.6% and 1.05% and he was evaluated on the collective performance of the branch with respect to customer satisfaction.  (Id. ¶ 13; Hagler Dep. (ECF No. 285-1) at  35.)

### III. Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides in relevant part:

> **(a) Motion for Summary Judgment or Partial Summary Judgment.**  A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.
>
> . . .
>
> **(c) Procedures.**
>
> **(1)** *Supporting Factual Positions*.  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(a), (c)(1)(A), (B).

> Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and

> upon motion, against a party who fails to make a showing
> sufficient to establish the existence of an element essential to that
> party's case, and on which that party will bear the burden of proof
> at trial."

Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S.

317, 322-23 (1986)).

An issue of material fact is in genuine dispute if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986); see Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) ("A

genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could

rationally find in favor of the non-moving party in light of his burden of proof." (citing Celotex

Corp., 477 U.S. at 322-23; Anderson, 477 U.S. at 248)).

> "[W]hen the moving party has carried its burden under Rule 56(c),
> its opponent must do more than simply show that there is some
> metaphysical doubt as to the material facts . . . . Where the record
> taken as a whole could not lead a rational trier of fact to find for
> the nonmoving party, there is no genuine issue for trial."

Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 586-87 (1986)).  The court must rely on the substantive law to identify

which facts are material.  Abington Friends Sch., 480 F.3d at 256 (citing Anderson, 477 U.S. at

248).

In deciding a summary judgment motion, a court must view the facts in the light most

favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts

in favor of the nonmoving party.  Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129,

130 (3d Cir. 2001); Doe v. Cnty. of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001); Heller v.

Shaw Indus., Inc., 167 F.3d 146, 151 (3d Cir. 1999).  A court must not engage in credibility

8

determinations at the summary judgment stage.  Simpson v. Kay Jewelers, Div. of Sterling, Inc.,

142 F.3d 639, 643 n.3 (3d Cir. 1998).


## IV. Discussion

The FLSA is a federal statute, originally enacted in 1938 and designed to combat

substandard labor conditions relating to unfair wages, overlong working hours and a variety of

other perceived evils.  At issue in this motion for summary judgment are some of the myriad

exemptions to the FLSA's overtime requirements.  Specifically, ERAC-South Central claims that

Hagler was exempt from the FLSA's compensation requirements under one of the following

exemptions:  1) executive; 2) administrative; or 3) combination.

As a preliminary matter, before addressing the substantive arguments relating to FLSA

exemptions, the court will address the two secondary arguments presented by the parties.  First,

ERAC-South Central argues that Hagler submitted a sham affidavit after his deposition, which

this court should disregard in assessing the existence of genuinely disputed material facts.

Second, Hagler argues that ERAC-South Central failed to disclose the identity of witnesses

whose statements were attached to its motion for summary judgment, in violation of Rule 26 of

the Federal Rules of Civil Procedure.


### A. Sham Affidavit Doctrine

ERAC-South Central asserts that Hagler submitted a "sham affidavit."  The sham

affidavit issue was initially raised in ERAC-South Central's reply memorandum in support of its

motion for summary judgment as to Halger (as it was in the briefing dealing with the other

sample plaintiffs).  At oral arguments on the motions for summary judgment, held on June 29,

9

2011, the court permitted plaintiffs to file supplemental briefs in response to the sham affidavit

issue, and permitted defendants to file response supplemental briefs on the issue.  The court

continued the oral argument until July 25, 2011, at which time it heard arguments on the sham

affidavit issue.  Unlike with many other sample plaintiffs, ERAC-South Central never filed a

response supplemental brief on the sham affidavit issue with respect to Hagler, and defendants'

master supplemental brief with respect to the sham affidavit issue did not specifically refer to

Hagler.  It is not apparent to the court, however, that ERAC-South Central waived the issue,

based on arguments presented at the hearing on July 25, 2011.  (Tr. of Continued Arg. (ECF No.

807) at 56-57, 103, July 25, 2011.)   The court will, in framing the sham affidavit issue, rely on

the arguments raised by ERAC-South Central in its summary judgment reply brief in light of the

absence of any supplemental briefing specifically addressing the sham affidavit issue.

Under the "sham affidavit" doctrine, district courts "'disregard[] an offsetting affidavit

that is submitted in opposition to a motion for summary judgment when the affidavit contradicts

the affiant's prior deposition testimony.'"  Seitz v. Detweiler, Hershey and Assocs., P.C. (In re

CitX Corp.), 448 F.3d 672, 679 (3d Cir. 2006) (quoting Baer v. Chase, 392 F.3d 609, 624 (3d

Cir. 2004)); see, e.g., Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 252 (3d Cir. 2007)

(holding that to permit the plaintiffs to engineer factual disputes by means of self-serving

affidavits "'would greatly diminish the utility of summary judgment as a procedure for screening

out sham issues of fact'" (quoting Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 577-

78 (2d Cir. 1969))); Zalewski v. PNC Fin. Servs. Group, Inc., No. 06-1231, 2008 U.S. Dist.

LEXIS 70026, at *4 (W.D. Pa. Feb. 4, 2008) (second report and recommendation) (granting

summary judgment based on employee's "performance evaluations . . . , her contemporaneous

reporting of her job responsibilities, [her] resume, and her deposition testimony"), adopted by

10

Memorandum Opinion, <u>Zalewski v. PNC Fin. Servs. Group, Inc.</u>, No. 06-1231 (W.D. Pa. Apr. 7, 2008).

"A sham affidavit is a contradictory affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment." <u>Jiminez</u>, 503 F.3d at 253.  Because the trial court is vested with the inherent power to grant summary judgment on disputed records, <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 251 (1986), the court may conclude that no reasonable jury could accord evidentiary weight to an affidavit that is clearly offered solely for the purpose of defeating summary judgment.  <u>Jiminez</u>, 503 F.3d at 253.  The practical underpinning of the sham affidavit doctrine "is that prior depositions are more reliable than affidavits."  <u>Id.</u>

In <u>Jiminez</u>, the Court of Appeals for the Third Circuit recognized that other courts of appeals have "adopted a particularly robust version of the sham affidavit doctrine, holding that, whenever a subsequent affidavit contradicts prior deposition testimony, it should be disregarded." <u>Id.</u> at 254.  The Court of Appeals for the Third Circuit has "adopted a more flexible approach."  <u>Id.</u>  The court recognized in <u>Jiminez</u> that "not all contradictory affidavits are necessarily shams."  <u>Id.</u>  Notably, "'[w]hen there is independent evidence in the record to bolster an otherwise questionable affidavit, courts generally have refused to disregard the affidavit."  <u>Id.</u> (quoting <u>Baer v. Chase</u>, 392 F.3d 609, 625 (3d Cir. 2004)).  "Such corroborating evidence may establish that the affiant was 'understandably' mistaken, confused, or not in possession of all the facts during the previous deposition," and the affiant should have the opportunity to provide a "satisfactory explanation" for the conflict between the prior deposition and the affidavit.  <u>Id.</u>; <u>see</u> <u>Martin v. Merrell Dow Pharmaceuticals, Inc.</u>, 851 F.2d 703, 706 (3d Cir. 1988) ("When, as in the present case, the affiant was carefully questioned on the issue, had access to the relevant

information at the time, and provided no satisfactory explanation for the later contradiction, the courts of appeals are in agreement that the subsequent affidavit does not create a *genuine* issue of material fact.").

When deposition testimony is ambiguous or incomplete, subsequent affidavits may be provided to clarify the testimony and will not be discarded as sham documents. <u>See</u> <u>Lytle v. Capital Area Intermediate Unit</u>, No.1:05-CV-0133, 2009 WL 82483, at *2 (M.D. Pa. Jan. 9, 2009) ("Situations may arise where an affidavit does not 'raise a new or distinct matter,' but rather explains certain aspects of a deposition testimony that caused confusion." (quoting <u>Baer</u>, 392 F.3d at 625)).  To that end, "[d]isregarding statements in an affidavit is appropriate on 'clear and extreme facts' . . . when the affidavit is 'flatly contradictory' to the prior testimony . . . ." <u>Coleman v. Cerski</u>, No. 3:04-cv-1423, 2007 WL 2908266, at *5 (M.D. Pa. Oct. 4, 2007) (quoting <u>Videon Chevrolet, Inc. v. Gen. Motors Corp.</u>, 992 F.2d 482, 488 (3d Cir. 1993)).  When allegations in a subsequent affidavit could support statements made in prior deposition testimony, the dueling statements "are more appropriately dealt with on cross-examination than on summary judgment."  <u>Ragan v. Fuentes</u>, No. 05-2825, 2007 WL 2892948, at *11 (D.N.J. Sept. 28, 2007).

Hagler's original declaration is dated October 20, 2009.  (Hagler Decl. (ECF No. 313, Ex. C).)  He was deposed on October 28, 2009 (Hagler Dep. (ECF No. 285-1) at 2), and submitted a supplemental declaration dated January 31, 2011 (Hagler Suppl. Decl. (ECF No. 313, Ex. B)). Hagler argues the two declarations are consistent with each other and his deposition testimony. ERAC-South Central argues there are inconsistencies between the declarations and the deposition testimony.  The court notes that Hagler's initial declaration was made prior to the deposition.  In such circumstances, the sham affidavit doctrine still applies because there is "no

principle that cabins sham affidavits to a particular sequence." <u>In re CitX Corp.</u>, 448 F.3d at

679-80.  Nonetheless, "cross-examining the affiant in [the] later deposition seems the better way

to find the flaws in a bogus affidavit."  <u>Id.</u>

 The only clearly enunciated challenge to Hagler's declaration statements is that his

declaration statements that he did not participate in the hiring and discipline of branch employees

and did not direct or train other ERAC-South Central employees are refuted by his deposition

testimony.  (<u>See</u> Reply Br. (ECF No. 390) at 4.)  The other issues raised by ERAC-South Central

are directed not at Hagler's declarations, but at the factual section of plaintiffs' briefing.  Those

arguments are not viable.  The court would not consider the interpretation of plaintiffs' counsel

or that counsel's presentation of the facts to be evidentiary or to create a genuine issue of

material fact unless supported by the record.

 With respect to the declaration statements, the court reviewed the declarations, and could

not discern any sham statement.  With respect to participation in hiring and disciplining of

branch employees, Hagler's declarations did not contradict his deposition testimony.  To the

extent Hagler's deposition testimony or declaration statements reflect his opinion about the scope

of his responsibilities, and his legal conclusions about the exemptions relevant to this case, the

court will not consider that testimony or those statements sufficient to create genuine issues of

material *fact*.  The court finds the challenged declaration statements are not flatly contradictory

of Hagler's deposition testimony.  The declarations are, therefore, not shams.  The court notes

that ERAC-South Central could not meet its substantial burden of proof on summary judgment

even if the declarations were disregarded.  Notably, most, if not all, of the factual information

contained in the first section of this memorandum opinion is derived from sources other than the

challenged portions of the declarations.  Even if the declarations were stricken from the record,

there would still be sufficient genuine disputes of material fact to preclude the court from entering summary judgment in ERAC-South Central's favor.

### B. Rule 26 Disclosures

Plaintiffs assert that statements submitted by defendants in support of the various motions for summary judgment were made in violation of Federal Rule of Civil Procedure 26. Defendants argue that they satisfied their Rule 26 obligations because the identities of the ERAC-South Central employees who made declarations ("declarants") were disclosed in the course of depositions.

A party must provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." FED. R. CIV. P. 26(a)(1)(A)(i). "A party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures." FED. R. CIV. P. 26(a)(1)(E).

Under Federal Rule of Civil Procedure 26(e)(1):

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>
> **(A)** in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been

made known to the other parties during the discovery process or in writing; or

**(B)** as ordered by the court.

Rule 37(c) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified *or is harmless*." FED. R. CIV. P. 37(c) (emphasis added); see Sherrod v. Lingle, 223 F.3d 605, 612 (7th Cir. 2000).

Because the court is denying this motion for summary judgment, it need not rule on the propriety of the disclosures under Rule 26.   Instead, the discretionary application of Rule 37 sufficiently disposes of the issue, because, presuming defendants did violate Rule 26, the presumed violations would have been harmless.  The imposition of Rule 37 sanctions is within the discretion of this court.  Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div., 60 F.3d 153, 156 (3d Cir. 1995).  There are several factors which courts of appeals will consider in evaluating how this court exercises its discretion regarding Rule 37 sanctions.  In re TMI Litig., 193 F.3d 613, 721 (3d Cir. 1999).  This court will use those factors as a guide in applying its discretion. The factors are:

(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified,

(2) the ability of that party to cure the prejudice,

(3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and

15

(4) bad faith or willfulness in failing to comply with the district

court's order.

Id. (citing Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 904-05 (3d Cir.

1977)).

Hagler was given the opportunity to pursue additional discovery of declarants before the

court ruled on the motion for summary judgment and chose not to do so.  (Tr. of Continued Arg.

(ECF No. 807) at 117, July 25, 2011.)  The only relief requested by plaintiffs in the briefing on

this issue is a "request that the Court disregard the declarations of Defendants' witnesses

provided after the close of the summary judgment discovery period."  (Pl.'s Resp. to Defs.'

Suppl. Br. on the Sufficiency of Disclosures (ECF No. 791) at 2.)  There is no pending motion

for sanctions.  As the court explains *infra* in Section IV.C, genuinely disputed material facts

compel a resolution of this motion in favor of Hagler.  Thus, to the extent the court relied on

declarants' testimony, the reliance was harmless, as the only relief requested by Hagler relates to

the court's determination of this motion, on which Hagler ultimately prevailed.

Applying the TMI/Meyers factors, the court finds: first, there is no prejudice to Hagler, as

explained above; second, Hagler had the opportunity to conduct further discovery with respect to

declarants, but chose not to do so, and could have cured any perceived prejudice; third, efficient

administration of this multidistrict litigation compels the court to resolve this summary judgment

motion without further procedural delay or complicated wrangling of the record without purpose;

and fourth, the court finds no bad faith on the part of ERAC-South Central.  For these reasons,

and all the reasons listed above, but primarily because the court is resolving the summary

judgment in favor of Hagler, there is no need to disregard declarants' statements, as requested by

Hagler.

### C. The FLSA Exemptions

#### 1.  General Framework

The FLSA exempts from its overtime provisions "any 'employee in a bona fide executive, administrative, or professional capacity.'"  Soehnle v. Hess Corp., 399 F. App'x 749, 750 n.1 (3d Cir. 2010) (quoting 29 U.S.C. § 213(a)(1)).  Additionally, the FLSA exempts from its overtime provisions "[e]mployees who perform a combination of exempt duties."  29 C.F.R. § 541.708.

In light of the broad remedial purpose of the FLSA,[4] exemptions are narrowly construed against the employer.  Madison v. Resources for Human Dev., Inc., 233 F.3d 175, 183 (3d Cir. 2000).  An FLSA exemption is properly characterized as an affirmative defense.  Id. at 180-81, 183.  Thus, "[t]he burden of proof to establish that its employees come within the scope of an overtime exemption is on the employer."  Friedrich v. U.S. Computer Serv., 974 F.2d 409, 412 (3d Cir. 1992).  "[I]f the record is unclear as to some exemption requirement, the employer will be held not to have satisfied its burden."  Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 900 (3d Cir. 1991).

ERAC-South Central bears the burden of proving that Hagler was exempt from the overtime provisions of the FLSA.  Id.  In order for summary judgment to be granted, ERAC-South Central must establish all the essential elements of the exemption to the extent required by the summary judgment standard discussed above.  If a reasonable jury could find that ERAC-South Central did not meet its burden with respect to just one element of the exemptions, it

---

[4] "The Fair Labor Standards Act is part of the large body of humanitarian and remedial legislation enacted during the Great Depression, and has been liberally interpreted."  Brock v. Richardson, 812 F.2d 121, 123 (3d Cir. 1987); see De Asencio v. Tyson Foods, Inc., 500 F.3d 361, 373 (3d Cir. 2007); Sperling v. Hoffman-La Roche Inc., 862 F.2d 439, 446-47 (3d Cir. 1988) (relying on the FLSA's "broad remedial purpose" as a basis for a liberal construction of the statute in favor of potential plaintiffs).

would be compelled to return a verdict in favor of Hagler.  As such, summary judgment is inappropriate here unless there are no genuine issues as to material facts with respect to *any* of the elements of the exemption.  Each exemption, however, is independently sufficient to provide the basis for judgment in favor of ERAC-South Central.  See 29 U.S.C. § 213(a)(1) ( providing that "any employee employed in a bona fide executive, administrative, *or* professional capacity" is exempt (emphasis added)).  To prevail, ERAC-South Central must establish a lack of genuinely disputed material facts with respect to *all* the elements of at least one of the asserted exemptions.

The Secretary of Labor has statutory authority to publish FLSA regulations to aid courts in determining the scope of exemptions and has exercised that authority.  69 Fed. Reg. 22,121 (Apr. 23, 2004).  Section 13(a)(1)  of the FLSA provides that "any employee employed in a bona fide executive, administrative, or professional capacity . . . or in the capacity of outside salesman *as such terms are defined and delimited from time to time by regulations of the Secretary*" is exempt.  29 U.S.C. § 213(a)(1) (emphasis added).  Unlike prior regulations, the currently applicable 2004 regulations were adopted after notice and comment and fall within the ambit of the Secretary's legislative rule-making authority.  69 Fed. Reg. 22,121, 22,124 (Apr. 23, 2004).  These regulations are, therefore, entitled to <u>Chevron</u> deference.  <u>See</u>  <u>Chevron USA v. Natural Res. Def. Council</u>, 467 U.S. 837 (1984); <u>Cash v. Cycle Craft Co., Inc.</u>, 508 F.3d 680, 683. (1st Cir. 2007).

Under the regulations, exempt work includes any work which is "directly and closely related to the performance of exempt work."  29 C.F.R. § 541.703.  The regulations provide the following guidance:

> The phrase "directly and closely related" means tasks that are related to exempt duties and that contribute to or facilitate performance of exempt work. Thus, "directly and closely related" work may include physical tasks and menial tasks that arise out of exempt duties, and the routine work without which the exempt employee's exempt work cannot be performed properly. Work "directly and closely related" to the performance of exempt duties may also include recordkeeping; monitoring and adjusting machinery; taking notes; using the computer to create documents or presentations; opening the mail for the purpose of reading it and making decisions; and using a photocopier or fax machine. Work is not "directly and closely related" if the work is remotely related or completely unrelated to exempt duties.

Id.   In a similar vein, "[o]ccasional, infrequently recurring tasks that cannot practicably be performed by nonexempt employees" are exempt when they are done as a means of performing an exempt task.  29 C.F.R. § 541.707.  The court should consider the following factors in determining whether occasional tasks are exempt: (1) "[w]hether the same work is performed by any of the exempt employee's subordinates"; (2) the "practicability of delegating the work to a nonexempt employee"; (3) "whether the exempt employee performs the task frequently or occasionally"; and (4) "existence of an industry practice for the exempt employee to perform the task."  Id.

The executive, administrative and combination exemptions will be addressed in order.

## 2.  The Executive Exemption

An exempt "executive" is any employee:

(1) Compensated on a salary basis at a rate of not less than $455 per week . . . ;[5]

_____

[5] The parties do not dispute that plaintiffs satisfied the "salary basis" requirement of the executive and administrative exemptions. This memorandum opinion, therefore, will not discuss that element of the exemptions.

(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) Who customarily and regularly directs the work of two or more other employees; and

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).

### (a)  Management as Primary Duty

The regulations provide a nonexhaustive list of "management" duties.  29 C.F.R. § 541.102.[6]  An employee may concurrently perform nonexempt duties and still qualify for the executive exemption as long as the requirements of § 541.100 (including the primary duty requirement) are otherwise satisfied.  Id. § 541.106.

The regulations define "primary duty" as "the principal, main, major or most important duty that the employee performs."  29 C.F.R. § 541.700(a); see Reich v. Wyoming, 993 F.2d 739

---

[6] Section 541.102 provides:

> Generally, "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102

742 (10th Cir. 1993) (providing that the employee's primary duty is that which is of principal importance to his or her employer); Donovan v. Burger King Corp., 675 F.2d 516, 521 (2d Cir. 1982) (finding assistant manager's primary duty to be that which is most critical or important to success of the business).   Thus, "[d]etermination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."  29 C.F.R. § 541.700(a).  The regulations identify four nonexhaustive factors to consider when determining an employee's primary duty, including:

> (1) "the relative importance of the exempt duties as compared with other types of duties;"
>
> (2) "the amount of time spent performing exempt work;"
>
> (3) "the employee's relative freedom from direct supervision; and"
>
> (4) "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee."

Id.  The amount of time spent in the performance of exempt work may be a useful guide in determining whether exempt work is an employee's primary duty.  Id.  Employees who spend more than half of their time on exempt work generally satisfy the primary duty requirement.  Id. The regulations caution, however, against blind adherence to a time-based analysis, as time spent on exempt work is only one of the four nonexhaustive factors to consider.  Id. [7]

---

[7] The regulations provide the following example of the application of the primary duty analysis:

> [A]ssistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register. However, if such assistant managers are closely supervised and earn little more than the nonexempt employees, the assistant managers generally would not satisfy the primary duty requirement.

29 C.F.R. § 541.700(c).

Each of the four factors will be considered in order.

First, with respect to the relative importance of exempt duties, a jury could reasonably determine that Hagler's limited exempt duties were much less important than his nonexempt duties.  Among Hagler's exempt executive duties were his limited role training and verbally disciplining or otherwise providing feedback to employees, and any time he spent directing and delegating other employees in their work, including the time he spent as "counter quarterback." A jury could reasonably conclude, based upon his testimony, that these obligations were not nearly as important to ERAC-South Central as Hagler's responsibilities in writing rental tickets, washing vehicles, performing LOFR maintenance and assisting customers.  Those labor-intensive or inside-sales tasks (which are nonexempt) were vital to the success of his branch.  It is reasonable to conclude that Hagler's most important purpose was to complete the menial and sales tasks necessary to rent cars to customers, without incurring overtime expenses to the branch.  This conclusion is bolstered by the substantial evidence in the record that his managerial roles were very limited, and involved mostly unimportant decisions, such as maintaining the flex-time schedule, assigning tasks to employees and filling in perfunctory, insubstantial comments on employee reviews.  The record also reflects that many of these duties were shared by nonexempt employees, which suggests they are less important to the success of the business. The first factor weighs against Hagler's primary duty being management.

Second, regarding the amount of time spent on exempt work, Hagler testified that he spent seventy to eighty percent of his time at ERAC-South Central on nonexempt tasks such as writing rental tickets, washing vehicles, performing LOFR maintenance and assisting customers. The second factor weighs against Hagler's primary duty being management.

Third, with respect to freedom from supervision, Hagler's testimony indicated that most of his managerial responsibilities were closely overseen by his branch manager, who was usually present at the branch, and that those tasks involved little meaningful discretion.  Freedom from supervision includes the concept of independent discretion.  Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1270 n.57 (11th Cir. 2008) ("Having discretionary power is one aspect of freedom from supervision. . . . Thus, the . . . regulations . . . are consistent with[] our consideration of the frequency with  which an employee exercises discretionary powers in our primary duty analysis.").  There is little, if any, evidence in the record showing that Hagler exercised substantial discretion in matters of substantial impact to the business.  The third factor weighs against Hagler's primary duty being management.

Fourth, the court must consider Hagler's wage in relation to nonexempt employees.  Because the record reflects that Hagler was compensated at a wage which was significantly higher than the nonexempt employees with whom he worked, even when drawing reasonable inferences in his favor, and assessing the hourly rate which would correspond with his salary for a nonexempt employee,[8]  this factor weighs in favor of his primary duty being management.

_____

[8] A few courts have discouraged the use of mathematics to compare wages with salaries, as this court has done.  See, e.g., Taylor v. Autozone Inc., No. CV 10–08125–PCT–FJM, 2012 WL 254238, at *11 (D. Ariz. Jan. 27, 2012); Moore v. Tractor Supply Co., 352 F. Supp. 2d 1268, 1279 (S.D. Fla. 2004) (holding that the court should not perform "mathematical gymnastics," such as dividing an employee's weekly salary by the number of hours he worked to determine his hourly wage, but should instead "simply compare[] the manager's weekly salary with the highest possible non-exempt weekly wage" (assuming forty hours of work)).  To compare a weekly salary with an hourly wage is to compare apples with oranges.  Ultimately, in order to make a comparison, the court must engage in some amount of mathematical extrapolation.  For example, in Moore, although the court dismissed the use of mathematics, in order to make a meaningful comparison, the court was required to assume forty hours worked by nonexempt employees to determine a "weekly wage."  352 F. Supp. 2d at 1279.  The court finds the approach utilized in this opinion to be the most useful and appropriate way to provide a meaningful comparison.  Instead of making unsupported assumptions about the number of hours worked, the court is resolving factual disputes in light of the summary judgment standard.  Support for this court's approach is found in a decision of the Court of Appeals for the Third Circuit:

> [T]he regulation requires an analysis of the relationship between the foremen's salary and the wages paid to the crew members.  The foremen's salary here

The court concludes that, when viewing the facts in the light most favorable to Hagler, three of the four primary duty factors collectively could be found in his favor, it is for a jury to determine whether his primary duty was management. A reasonable jury could conclude that Hagler's nonexempt tasks—like writing sales tickets, cleaning cars, and ensuring LOFR maintenance was performed—were his duties of principal importance to ERAC-South Central, see Reich v. Wyoming 993 F.2d 739, 742 (10th Cir. 1993), and were most critical or important to the success of ERAC-South Central, see Donovan v. Burger King Corp., 675 F.2d 516, 521 (2d Cir. 1982).   A jury could reasonably conclude that his most critical or important purpose to ERAC-South Central was to perform the necessary menial functions remaining after the nonexempt management assistants and management trainees had gone home for the day.   This conclusion is supported by Hagler's testimony that his job functions as assistant manager were very similar to the responsibilities of nonexempt employees at the branch and the court's conclusion that those managerial tasks he *did* perform were largely unimportant, noncritical functions, many of which were shared with nonexempt employees.

*(b) Customarily and Regularly Directs Work of Two or More Employees*

To qualify under the executive exemption, an employee must customarily and regularly direct the work of two or more other employees, or their equivalent.  29 C.F.R. §§ 541.100(a)(3), 541.104(a).  According to the regulations:

---

breaks down to $129 per nine-hour day.  The crew members receive $106.50 per eight-hour day.  If the crew members worked nine hours, their daily wage would come to $126.47 (with overtime).  There are, however, some benefits that the foremen receive that the hourly workers do not. . . . In sum, this evidence, while inclined in favor of exempt status, is not compelling.

Guthrie v. Lady Jane Collieries, Inc., 722 F.2d 1141, 1146 (3d Cir. 1983).

> The phrase "customarily and regularly" means a frequency that must be greater than occasional but which, of course, may be less than constant. Tasks or work performed "customarily and regularly" includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks.

29 C.F.R. § 541.701.   "An employee who merely assists the manager of a particular department and supervises two or more employees only in the actual manager's absence, does not meet this requirement." Id. § 541.104(c).

ERAC-South Central did not meet its burden to demonstrate that, as a matter of law, Hagler customarily and regularly directed the work of two or more full time employees.  "An employee who merely assists the manager of a particular department and supervises two or more employees only in the actual manager's absence, does not meet this requirement." Id.  Accepting as true Hagler's deposition testimony, Hagler's branch manager was responsible for directing and supervising the ERAC-South Central employees, managing them, and resolving disputes about the work schedule.

A reasonable jury could also conclude that Hagler only supervised other employees in the branch when the manager was not present.  Hagler testified that he deferred to his superiors with respect to important decisions, when the branch manager was not present, and that his disciplinary responsibilities in the branch manager's absence were purely documentary and did not include imposing discipline beyond counseling other employees.

The court concludes that ERAC-South Central failed to meet its burden to satisfy this factor of the executive exemption because a reasonable jury could conclude that Hagler "merely assist[ed] the manager … and supervise[d] . . . only in the actual manager's absence.".  29 C.F.R. § 541.104(c).

25

*(c)  Authority to Hire, Fire, or Effect Some "Other Change of Status"*

In order to qualify as an exempt executive, an employee must have authority to hire or fire other employees, or have particular weight given to his or her suggestions and recommendations regarding hiring, firing, promotion, advancement or other changes of status. 29 C.F.R. § 541.100(a)(4).  "[O]ther change of status" means any "tangible employment action" as that term is commonly used under Title VII, such as "reassignment with significantly different responsibilities."  69 Fed. Reg. 22,122, 22,131 (Apr. 23, 2004).  In the Title VII context, the Supreme Court has defined "tangible employment action [to] constitute[] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998); see Pa. State Police v. Suders, 542 U.S. 129, 144 (2004).  "A tangible employment action in most cases inflicts direct economic harm."  Burlington Indus., 524 U.S. at 762.

To determine whether an employee's suggestions and recommendations are given "particular weight," it is not required that the employee have final authority regarding any of the above-listed changes in employment status.  29 C.F.R. § 541.105.  Instead, courts should consider whether making suggestions is part of the employee's job description or duties, whether suggestions are made or requested frequently, and whether they are frequently relied upon.  Id.; see Davis v. Mountaire Farms, Inc., 453 F.3d 554, 558 (3d Cir. 2006) (finding crew leaders of chicken catchers to be nonexempt when they could not hire or fire employees, but had limited authority to borrow workers from other crews, and made referrals to their employer regarding prospective employees).

26

There are genuine issues of fact with respect to this element of ERAC-South Central's affirmative defense which preclude summary judgment.  Hagler testified he was not responsible for the hiring, firing, advancement, promotion or other changes in the status of branch employees.  The record shows that Hagler neither meaningfully participated in nor made material suggestions with respect to hiring, firing, advancement, promotion or other material changes in status.  He testified he did not discipline employees, beyond documenting what happened and providing informal feedback to employees at the branch, and leaving the actual decision-making process to his superiors.

With respect to particular weight, the court must consider whether suggesting employment actions is part of the employee's job description or duties, whether suggestions are frequently made or requested, and whether they are frequently relied upon.  29 C.F.R. § 541.105; Davis v. Mountaire Farms, Inc., 453 F.3d 554, 558 (3d Cir. 2006).  There are genuine disputes with respect to this component.  Unlike with other sample plaintiffs, ERAC-South Central introduced no testimony by any of its employees that hiring, firing, termination or other material suggestions made by Hagler or other assistant managers was elicited, expected or given particular weight.  Although there is testimony that he participated in employee evaluations, which he believed were considered for promotional purposes, his participation was sufficiently limited that a reasonable jury could conclude ERAC-South Central did not meet its burden of proof.  Merely making perfunctory comments on performance reviews may have so little impact on a promotional decision that a reasonable jury could find his feedback was not relied upon by ERAC-South Central.

ERAC-South Central's attempt to argue that Hagler's reporting disciplinary situations is sufficient to meet this element is unavailing.  The record reflects that he did little more in those

situations than document and refer issues to his superiors.  All employees have some degree of responsibility to report disciplinary or troubling information to their employer about co-workers. Creating a record or reporting an issue does not reach the level necessary to meet the requirements of this element of the executive exemption.

Because there are material facts in dispute with respect to three of the four elements of the executive exemption, ERAC-South Central failed to meet its burden and summary judgment cannot be granted on the basis of the executive exemption.

### 3.  The Administrative Exemption

An exempt "administrative" employee is any employee:

(1) Compensated on a salary or fee basis at a rate not less than $455 per week[9] . . . ;

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).

### (a)  Primary Duty of Management or Business Related Office Work

Under the administrative exemption, an employee's "primary duty"[10] must consist of performing office or nonmanual work directly related to the management and general business

---

[9] The parties do not dispute that plaintiffs satisfied the "salary basis" requirement of the executive and administrative exemptions. This memorandum opinion, therefore, will not discuss that element of the exemptions.
[10] See supra, Section IV.C.2.a, for a discussion of the term "primary duty."

operations of the employer.  29 C.F.R. § 541.200(a)(2).  Section 541.201(b) provides examples of "[w]ork directly related to management or general business operations":

> Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations; government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Some of these activities may be performed by employees who also would qualify for another exemption.

29 C.F.R. § 541.201(b).

In order for work to be "directly related to the management or general business operations," it must be "directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." Id. § 541.201(a).  The concept of a "production worker" is not limited to individuals involved in the manufacture of tangibles. Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 903-04 (3d Cir. 1991).  For example, in Martin v. Cooper, the Court of Appeals for the Third Circuit held inside[11] salespersons of electrical products to be production, rather than administrative, employees. Id. at 903.

The administrative/production dichotomy turns on whether the services or goods provided by the employee constitute the marketplace offerings of the employer, or whether they contribute to the running of the business itself. Bothell v. Phase Metrics, Inc., 299 F.3d 1120, 1127 (9th Cir. 2002).  Thus, context matters: an underwriter at a department store who decides whether to issue credit to consumers "performs a support function auxiliary to the department

---

[11] An "inside" salesperson is an employee who makes sales inside his or her place of business, which contrasts with the outside salesperson, exempt under the FLSA, who must be "customarily and regularly engaged away from the employer's place of business."  29 C.F.R. § 541.500.

store's primary function of selling clothes"; whereas, an underwriter for a large bank "is directly engaged in creating the 'goods'—loans and other financial services—produced and sold by [the bank]." Davis v. J.P. Morgan Chase & Co., 587 F.3d 529, 535 (2d Cir. 2009).  Courts distinguish exempt administrative employees from nonexempt production employees who perform administrative tasks by determining whether the employees are engaged in the "running of the business and not merely . . . the day-to-day carrying out of its affairs." Bratt v. Cnty. of Los Angeles, 912 F.2d 1066, 1070 (9th Cir. 1990).

ERAC-South Central argues that Hagler was involved in many of the activities expressly identified in § 541.201(b), including finance, marketing, accounting, safety and health, personnel management and human resources.  (Mem. Supp. Def. ELRAC's Mot. Summ. J. as to Pl. Joseph Hagler ("ERAC-South Central Br.") (ECF No. 244) at 19-21.)  ERAC-South Central points to Hagler's responsibilities in managing accounts receivable, managing finances of the branch, auditing other employees' tickets, scheduling branch employees, attempting to grow the branch's sales (which it considers marketing) and performing callbacks and argues that he performed administrative tasks.  (Id.)  Hagler asserts that his office responsibilities were not sufficiently important to ERAC-South Central and were merely the carrying out of its daily affairs.

To the extent ERAC-South Central points to specific administrative job duties performed by Hagler, many such duties were nonexempt.  For example, ERAC-South Central argues that Hagler's marketing and sales calls to customers and prospective customers were administrative tasks relating to marketing.  For a variety of reasons, the court is not persuaded that such actions, even if they were Hagler's primary duty, would qualify as administrative under the regulations.  First, making sales calls is not an office task.  Second, making sales calls and salesmanship (which are distinct from marketing) are not listed as examples of exempt areas of work in §

541.201(b).  Third, the regulations provide a separate exemption for outside sales employees,

which ERAC-South Central did not raise as a defense in this motion for summary judgment.

ERAC-South Central argues Hagler's responsibilities in auditing tickets, performing

callbacks and reviewing accounts receivable constituted administrative work.  That work,

however, is not administrative because it is merely the carrying out of ERAC-South Central's

day-to-day affairs.  Hagler's responsibilities amounted to participation in the production of

ERAC-South Central's marketplace offering—rental cars—as opposed to performance of an

auxiliary task directly related to the management of the business.  See 29 C.F.R. § 541.201(a);

Davis, 587 F.3d at 535; Bothell, 299 F.3d at 1127; Bratt, 912 F.2d at 1070.

With respect to other tasks which ERAC-South Central argues were administrative, there

are genuine disputes about whether Hagler performed those duties, the frequency of

performance, and what the performance actually entailed.  These disputes include Hagler's

purported responsibilities in finance—ERAC-South Central points to Hagler's access to the

branch safe as proof he was involved in finance—and scheduling employees.  As discussed

above with respect to the executive exemption, the court must accept as true Hagler's testimony

that his role in those tasks was limited, and that he generally did not participate in a meaningful

way in running the ERAC-South Central branch with respect to those aspects of the business.

More importantly, there is insufficient evidence to determine as a matter of law that the

arguably administrative tasks performed by Hagler constituted his "primary duty."  It is not the

province of this court on a motion for summary judgment to determine which witness's

testimony to credit and which to discredit, and the court cannot disregard the testimony of Hagler

that his primary responsibility in terms of time spent and importance to ERAC-South Central

was sales-related or involved physical labor.  Inside sales tasks and physical tasks are not within

the ambit of the administrative exemption. <u>Martin v. Cooper</u>, 940 F.2d at 903-06.  Inside

salespeople may be production employees.  <u>Id.</u>  ERAC-South Central did not meet its burden of

proving that Hagler's primary duty was management– or business-related office or nonmanual

work.

*(b)  Discretion and Independent Judgment and Matters of Significance*

To fall within the administrative exemption, an employee must "exercise . . . discretion

and independent judgment with respect to matters of significance" as part of his or her primary

duty.  29 C.F.R. § 541.200(a)(3).  The regulations consider the exercise of discretion and

independent judgment to involve evaluation of options and subsequent decisionmaking.  <u>Id.</u> §

541.202(a).  Courts should determine whether an employee exercises discretion and independent

judgment "in . . . light of all the facts involved in the particular employment situation in which

the question arises."  <u>Id.</u> § 541.202(b).  When determining whether an employee exercises

discretion and independent judgment with respect to matters of significance, courts should

consider the following nonexhaustive list of factors:

> whether the employee has authority to formulate, affect, interpret,
> or implement management policies or operating practices; whether
> the employee carries out major assignments in conducting the
> operations of the business; whether the employee performs work
> that affects business operations to a substantial degree, even if the
> employee's assignments are related to operation of a particular
> segment of the business; whether the employee has authority to
> commit the employer in matters that have significant financial
> impact; whether the employee has authority to waive or deviate
> from established policies and procedures without prior approval;
> whether the employee has authority to negotiate and bind the
> company on significant matters; whether the employee provides
> consultation or expert advice to management; whether the
> employee is involved in planning long- or short-term business
> objectives; whether the employee investigates and resolves matters

32

of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

Id.

The FLSA "discretion and independent judgment" requirement can be satisfied even if the employee's decisions are reviewed or changed by a superior.  "[T]he term 'discretion and independent judgment' does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review," but the employee's decisions "may consist of recommendations for action rather than the actual taking of action." 29 C.F.R. § 541.202(c).  For that reason, "[t]he fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment."  Id.  Employees can exercise discretion and independent judgment even when their recommendations are subject to review.  Id.; accord Paul v. UPMC Health Sys., No. 09-1565, 2009 WL 699943, at *12 (W.D. Pa. Mar. 10, 2009).   Carrying out clerical duties, on the other hand, is not sufficient for administrative exemption, even if the duties involve a small amount of discretion.  See Goldstein v. Dabanian, 291 F.2d 208, 210-11 (3d Cir. 1961) (holding that employees, whose duties included cashing checks, accepting payments and issuing money orders, were not within the administrative exemption).

Here, ERAC-South Central did not specifically address the factors enumerated in 29 C.F.R. § 541.202(b).  ERAC-South Central instead argued generally that when Hagler participated in scheduling employee duties, performing employee evaluations, reviewing accounts receivable and making callbacks, he was required to exercise independent judgment and discretion.  (ERAC-South Central Br. (ECF No. 252) at 21-24.)   None of these tasks reach

33

the level of importance or consequence contemplated by the regulations as necessary to qualify an employee for the administrative exemption. Section 541.202(b) gives examples of the types of a question a court should consider in this analysis, and suggests that the term "matters of significance" is a context-specific determination which "must be applied in the light of all the facts involved in the particular employment situation." 29 C.F.R. § 541.202(b). It refers to "major assignments," "matters that have significant financial impact," and establishing policies and objectives for the company. Id. For the most part, Hagler was bound by company policy, and did not deviate from it. He was usually subject to the oversight of the branch manager. The record reflects that Hagler deferred to superiors in resolving disputes. To the extent that he made discretionary decisions, those decisions were not significant enough, in the context of a car rental business, to meet the requirements of the regulations. Minor deviations in rates for specific types of cars, mediating employee disputes about flextime schedules and decisions about how and when to call customers who were late in paying their fees—the full extent of his independent discretion—are among the most mundane, least significant types of decisions made by employees at a car rental company. Merely because he could damage the business if he made a mistake or acted recklessly in his duties does not establish that he has the requisite discretion to meet the administrative exemption. 29 C.F.R. § 541.202(f) ("An employee does not exercise discretion and independent judgment with respect to matters of significance merely because the employer will experience financial losses if the employee fails to perform the job properly.").

Resolving factual disputes in favor of Hagler's testimony, the court finds that a reasonable jury could conclude that none of the enumerated factors listed in 29 C.F.R. § 541.200(a)(3) were proven. There are material facts in genuine dispute regarding both his independence and his discretion.

34

For the reasons stated above, the court finds that there are genuine disputes with respect to material facts in two of the three § 541.200(a) elements of the administrative exemption. Because ERAC-South Central has the burden of proving each element of the exemption, these genuine disputes preclude summary judgment on the basis of the administrative exemption.

### 4.  The Combination Exemption

Under the FLSA regulations, an employee who performs a combination of exempt duties—but who does not satisfy the primary duty requirement under any of the stand-alone exemptions—may nonetheless qualify for exempt status.  29 C.F.R. § 541.708.   "[A]n employee whose primary duty involves a combination of exempt administrative and exempt executive work may qualify for exemption" so long as the other requirements, such as the salary basis test, are met.  Id.; accord IntraComm, Inc. v. Baja, 492 F.3d 285, 292-95 (4th Cir. 2007) (deferring to the Secretary of Labor's interpretation that "the combination exemption provides a mechanism for cobbling together different exempt duties for the purposes of meeting the primary-duty test" but "does not . . . relieve employers of their burden to independently establish the other requirements of each exemption whose duties are combined").  The primary thrust of the combination exemption, therefore, is merely that the performance of exempt executive work cannot be the basis for preventing an otherwise exempt administrative employee from being exempted because his primary duty is blended between executive and administrative work and vice versa.  Id.

Hagler's testimony that he spent the majority of his time on nonexempt tasks, and the court's conclusion that a reasonable jury could conclude such nonexempt tasks constituted his primary duty preclude summary judgment on the basis of the combination exemption.

Conclusively, because ERAC-South Central did not meet its burden with respect to other necessary elements of both the administrative and the executive exemptions—beyond merely failing to establish the primary duty element—the combination exemption is inapplicable to Hagler.   See IntraComm, Inc. 492 F.3d at 292-95.   Thus, the court cannot grant ERAC-South Central's motion for summary judgment on the basis of the combination exemption, even if his primary duty were found to be some combination of exempt administrative and executive tasks.


### VI. Conclusion

For the reasons set forth in this memorandum opinion, because ERAC-South Central did not prove as a matter of law *all* the elements of at least one of the exemptions, and in consideration of the relevant summary judgment standard and the narrowly construed FLSA exemptions, ERAC-South Central's motion for summary judgment against sample plaintiff Kevin Hagler (ECF No. 251) will be denied.   Summary judgment is precluded by the abundance of disputed material facts regarding Kevin Hagler's job responsibilities, on which the court must defer to future resolution by a jury.   An order will follow.


By the court,


 /s/ Joy Flowers Conti_____
Hon. Joy Flowers Conti
United States District Judge


Date:   September 7, 2012_____

36